

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00278-CV

———————————————

IN THE INTEREST OF Q.C. AND P.C., CHILDREN

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-686108-20

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant K.C. (Mother) appeals the trial court's judgment modifying her conservatorship rights, child-custody arrangements, and child-support obligations. She raises six issues in her original opening brief, eight in her amended opening brief, three more in her reply, and numerous others in miscellaneous motions filed with this court. But Mother is bound to the issues raised in her opening brief—specifically, in her original opening brief. And as she concedes, none of those issues were briefed in accordance with the Rules of Appellate Procedure. Plus, even if she had obtained leave to raise new issues in her amended opening brief, her eight amended complaints also lack merit. Therefore, we will affirm.

## I. Background

Mother and Father share two daughters, and in 2021, Father petitioned to modify the conservatorship, custody, and child-support arrangements. The case continued for four years, and while much of what occurred has no bearing on this appeal, a scattering of pretrial rulings, mid-trial motions, and trial court findings remains relevant.

### A. Pretrial Rulings

At one point relatively early in the case, Mother filed a no-evidence motion for summary judgment. *See* Tex. R. Civ. P. 166a(i).[1] Mother's motion is missing from the

---

[1]Rule 166a has since been amended, but the "amendments apply only to a motion for summary judgment filed on or after March 1, 2026" and are thus

appellate record, as is Father's response. Regardless, the trial court denied Mother's motion.

Later, Mother sought to pre-admit Father's allegedly deficient discovery responses as deemed admissions. Again, the discovery responses are missing from the appellate record. But whatever the responses' contents, the trial court denied Mother's requested relief, ruling that it would not treat Father's responses as deemed admissions.

## B. Initial Trial

The parties then proceeded to a bench trial in August 2023. The record gives no indication that either party filed a written request for a jury before the trial began, nor did either party object when the bench trial commenced. As the judgment recites, "A jury was waived." *See* Tex. R. Civ. P. 216.

After the presentation of evidence concluded, the trial court interviewed both children in chambers, even though the children were under the age of 12 at the time. *See* Tex. Fam. Code § 153.009(a) (providing that, upon application, a trial court "shall interview in chambers a child 12 years of age or older and may interview in chambers a child under 12 years of age"). Then, the trial court announced its decision in a letter ruling.

---

inapplicable here. Sup. Ct. of Tex., *Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure*, Misc. Docket No. 26-9012 (Feb. 27, 2026). All citations to Rule 166a refer to the prior version of the Rule.

3

But not long thereafter, Father moved to reopen the evidence, and the trial court partially granted the motion and heard additional evidence and argument. Mother failed to appear at the November 2023 trial on the reopened evidence, though. So when she subsequently moved for a new trial, the trial court granted the motion but only as to the evidence it had heard in November, i.e., as to the reopened evidence.

## C.    Mid-Trial Motions

Before the trial court could conduct a new trial on the reopened evidence, Mother filed motions for mid-trial relief. Many of these motions—though relevant to her appellate complaints—are missing from the appellate record.

For example, Mother filed a motion for a jury trial, but the motion is not in the appellate record. Either way, the trial court heard arguments on the motion and verbally denied it at a mid-trial hearing in April 2024.

Similarly, Mother filed a mid-trial motion for an emergency restraining order, but the motion is not in the appellate record. However, again, the trial court heard arguments on the motion in April 2024. In fact, the transcript from that hearing reflects that Mother filed her motion during a recess and sought to present evidence on it that day. But the trial court explained that it would not hear evidence that day and would instead decide whether temporary relief was warranted based on the document itself. *See* Tex. R. Civ. P. 680 ("No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts

4

shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon."). Mother protested, alluding to video evidence and expert testimony that she had intended to offer at the hearing. Nonetheless, the trial court maintained its ruling and set the restraining-order motion for a full evidentiary hearing on another day.

Meanwhile, Mother also renewed a previously withdrawn request for accommodations under "the Americans with Disabilities Act [(ADA)] and other [unspecified] relevant federal and state laws."[2] Unlike the other mid-trial motions mentioned, this motion appears in the appellate record. And in it, Mother asserted that she had cognitive disabilities[3] that necessitated a wide range of accommodations. The trial court granted several of Mother's requested accommodations, including allowing "a helper" to sit with her at counsel table and giving her additional time to present her case. But the trial court denied Mother's request for "Communication Access Realtime Translation (CART) for real-time transcription," explaining that it

---

[2]When the trial court held a hearing on Mother's request for ADA accommodations in January 2024, Mother's counsel indicated that because Mother "[wa]s now represented[,] . . . [t]he ADA requests . . . [were] unnecessary," and Mother's counsel "d[id] not have any ADA requests on file." Mother filed her amended motion for accommodations after her counsel withdrew.

[3]Mother's amended motion stated that she had "multiple disabilities" as well as "an acquired brain injury post-COVID."

did not have access to that technology and its court reporter was not able to provide real-time transcription.

## D.    Trial, Findings, and Judgment

With these rulings in place, the trial court heard the final days of reopened trial evidence in May 2024. Then, the court issued a letter ruling appointing Father as sole managing conservator and Mother as possessory conservator; establishing the custody arrangements; detailing the trial court's "findings on child support pursuant to [Family Code] Section 154.130"; and explaining its "reasons . . . for deviating from the [statutory] guidelines for possession of and access to the children." [Capitalization altered.] *See* Tex. Fam. Code § 153.258(a) (providing that, when "the possession of the child varies from the standard possession order, . . . on request by a party, the court shall state in writing the specific reasons for the variance"). The trial court's "reasons . . . for deviating from the [statutory] guidelines" included findings that Mother had, for example,

- "stole[n] $1,000.00 from [one child's] account";

- "maintain[ed] . . . that [one] child . . . suffers from conditions the child does not have";

- "engaged in at least one physical altercation [with one child] . . . resulting in a minor injury to [that child]";

- "installed an app on the children's phone" and "co-opted the name and likeness of one of the child[ren]'s friends" to "circumvent the [trial] court's orders for electronic access to the children between possession periods";

6

- "expresse[d] to the children that [she] and the children w[ould] not be following the rules that the [trial c]ourt ha[d] ordered"; and

- "endangered [the children's] physical . . . [and] emotional well being."

These findings were reiterated in the trial court's subsequent final judgment. Nonetheless, Mother filed a request for findings of fact and conclusions of law, followed by tardy notices of past-due findings.[4] *See* Tex. R. Civ. P. 296–98. The trial court did not issue additional findings or conclusions.

## E.    Appellate Proceedings

Mother then appealed the trial court's judgment. Although her appellate brief was due in January 2025, she requested and received multiple extensions before ultimately filing her brief in May 2025. Despite the lengthy preparation time, her opening brief's purported legal analysis—which advanced six appellate issues—spanned just five pages with zero record references and a citation to a nonexistent case. *Cf.* Tex. R. App. P. 38.1(i).

Three months later, on the day Father's brief was due, Mother moved for leave to file an overhauled amended brief. Mother conceded that her original opening brief

---

[4]Mother's request for findings was filed 20 days after the judgment was signed. *Compare* Tex. R. Civ. P. 296 (stating that a request for findings and conclusions "shall be filed within twenty days after judgment is signed"), *with* Tex. R. Civ. P. 298 (stating that, after the trial court issues findings, a party may request additional or amended findings "within ten days after the court sends the original findings and conclusions"). She then filed a tardy notice of past-due filings more than a month later, and more than a month after that, she filed a second notice of past-due findings. *See* Tex. R. Civ. P. 297 (stating that, if a trial court fails to issue findings of fact and conclusions of law after a party's timely request, then "within thirty days after filing the original request," the requestor must file a notice of past-due findings).

7

had not complied with the Rules of Appellate Procedure and she stated that her amended opening brief "correct[ed the] technical deficiencies, incorporate[d] accurate citations to the record and legal authority, and present[ed] the substantive arguments in a clear, organized manner." Mother expressly represented that her "amendment w[ould] not expand issues"; it would merely "reorder[ the] arguments for clarity." We granted Mother's motion for leave based on these representations.

But as it turned out, Mother's amended brief was nearly three times the length of her original brief and it raised new and different appellate issues.[5] Thus, Father— who had already responded to Mother's original opening brief—found it necessary to prepare a second responsive brief. *See ERC Midstream LLC v. Am. Midstream Partners, LP*, 497 S.W.3d 99, 108 n.2 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (noting that court "rarely, if ever, addresses issues raised for the first time in amended or supplemental briefs because . . . [doing so] would potentially extend indefinitely the period in which such briefs could continue to be filed" (internal quotation marks omitted)).

Yet, even after Mother filed—and raised new issues in—her amended opening brief, she filed a reply brief raising more issues, and she filed motions that attempted to expand the issues still further. Indeed, Mother filed more than fifteen motions over

---

[5]Furthermore, Mother's amended opening brief cited to portions of case law that did not exist and quoted statements nowhere to be found in the cited case law.

the course of her appeal. Seven of those motions remain pending,[6] and because they implicate the scope of our review, we turn there first.

## II. Mother's Appellate Motions

Mother's still-pending motions fall into four categories:

- (1) two post-submission motions to supplement the record with evidence that was not before the trial court at the time it rendered judgment;[7]

- (2) a motion challenging a vexatious-litigant order allegedly entered against Mother in a severed cause;

- (3) two motions raising new appellate complaints about the trial court's judgment;[8] and

---

[6]Before Mother filed her amended opening brief, she moved for emergency relief and to supplement the record, which we denied. She also moved to strike the trial court's findings, which we carried with the case. Then, after Mother filed her amended opening brief, she moved to strike Father's responsive brief. We denied the motion, so Mother filed a motion for leave to file a supplemental brief, which motion we carried with the case. She also filed a motion to supplement the appellate record with "post-judgment medical documents," which we carried with the case.

Additionally, Mother filed a motion for temporary orders, and when that motion was denied, she filed another motion for temporary orders, along with three other motions. When all four motions were denied, she filed four new motions seeking a rehearing of each denied motion. The motions for rehearing were carried with the case.

[7]Mother's motions seek to supplement the record with "post-judgment medical documents." One of the motions also urges us to take judicial notice of three other judicial proceedings—including an unspecified justice court proceeding—as evidence "that the [alleged ADA] access violations at issue in this appeal were not isolated."

[8]Specifically, Mother filed a motion to strike the trial court's allegedly improper findings of fact and conclusions of law and a motion to file a supplemental brief. Mother's motion to strike complained of the findings' allegedly improper placement in the judgment. *Cf. infra* Section III.C.2. Meanwhile, even though Mother represented that her supplemental brief "d[id] **not** raise new issues," it attempted to raise multiple

9

- (4) two post-submission motions that—in addition to raising new appellate issues—seek temporary relief pending appeal.[9]

All of these motions fail.

First, we decline to supplement the record post-submission, *see Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 49, 50–51 (Tex. App.—Texarkana 2000, order) (denying request to supplement record post-submission when supplementation would delay disposition), and we cannot consider evidence that was not before the trial court anyway, *see Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 366–67 (Tex. 2019) (denying motion to supplement record and reiterating that "the supplementation rules cannot be used to create new evidence" and, for evidence to be considered on appeal, it "must have been admitted at the trial court"); *Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991) ("Our system is founded upon a belief that trial courts should first be given the opportunity to consider and weigh factual evidence[; p]ermitting challenge to a judgment based on affidavits first filed in the appellate court undermines this judicial structure.").

Second, Father's quest to deem Mother a vexatious litigant was severed from this cause, so any vexatious-litigant order entered in that severed cause is beyond the scope of this appeal. *See* Tex. R. Civ. P. 41; *cf. Schieffer v. Patterson*, 433 S.W.2d 418, 419

---

new issues—including new constitutional complaints, new arguments regarding "[s]ubsequent events" that occurred "months after trial," and new challenges to the severed vexatious-litigant order.

[9]Mother seeks rehearing of her previously denied motion for temporary orders, and she seeks a stay of the Attorney General's collection of child support.

(Tex. 1968) (reiterating rule that an order of severance "effectively separates the controversy into two causes").

Third, Mother cannot raise new appellate issues outside of those raised in her opening brief. *See* Tex. R. App. P. 38.1(f) (requiring appellant's brief to identify issues presented), 38.9 (explaining that briefs must "acquaint the court with the issues in a case"); *see also Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 64–65 (Tex. 1998); *MedStar Funding, LC v. Willumsen*, 651 S.W.3d 569, 572 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (supp'l op. on reh'g); *Craaybeek v. Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *4 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.).

And fourth, as for Mother's requests for temporary relief, those requests are—or soon will be—mooted by our disposition of this appeal.

Thus, all of Mother's pending motions are denied. Our review is limited to the trial court record and the appellate issues preserved in Mother's opening brief.

Of course, that raises the question: Which opening brief?

### III. Mother's Appellate Issues

Although Mother's original opening brief raises six issues, her amended opening brief abandons two, reframes four, and adds what we construe as another four.[10] Then, her reply brief tacks on three more.

---

[10]Mother's amended opening brief purports to raise five issues: (1) "legal insufficiency and structural error"; (2) the trial court's alleged failure to make

11

Mother's reply brief does not present a close call—"[t]he Texas Rules of Appellate Procedure do not allow parties to add a new issue in their reply brief that was not discussed in their original brief." *Bookout v. Shelley*, No. 02-22-00055-CV, 2022 WL 17173526, at *20 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.); *see* Tex. R. App. P. 38.3. We thus need not address the three new issues raised in Mother's reply.[11]

But Mother's amended opening brief presents a more nuanced question. A party cannot raise new issues in an amended brief—unless it obtains leave to do so. *See* Tex. R. App. P. 38.7 (allowing amended briefing "whenever justice requires, on

---

"statutorily mandated findings"; (3) the trial court's alleged "refus[al] to conduct a mandatory child interview"; (4) the trial court's "exclu[sion of] expert testimony and denying offers of proof"; and (5) "cumulative Title II effective-communication denials." But the substance of her arguments strays from these labels.

For example, her "legal insufficiency" argument focuses on challenges to the trial court's summary judgment and discovery rulings and attacks the trial court's exclusion of her video evidence and its failure to provide a jury trial. As for the evidence presented at trial, Mother alleges that the trial court's ADA violations discriminated against her and impeded her ability to present her case. Meanwhile, she references numerous other alleged errors in passing without analyzing them as distinct appellate issues.

We thus renumber and reorganize Mother's issues for clarity. To the extent that Mother intends to raise additional complaints beyond those addressed herein, she has failed to adequately "acquaint the court with the issues" to enable our review. Tex. R. App. P. 38.9; *see* Tex. R. App. P. 38.1(f), (i); *Craaybeek*, 2021 WL 1803652, at *3–6.

[11]Specifically, we will not address the reply brief's complaints (1) that the trial court's findings of fact do not qualify as such because they do not cite specific evidence; (2) that the trial court abused its discretion in a variety of rulings on the admission of evidence at trial; and (3) that the trial court repeatedly denied Mother the opportunity to make offers of proof at trial.

whatever reasonable terms the court may prescribe"); 2d Tex. App. (Fort Worth) Loc. R. 1(B) (recognizing that appellant may file timely opening brief and reply without leave but "[a]ll other briefs of the parties must be accompanied by a motion for leave to file, unless the brief is requested by the court"); *Standard Fruit & Vegetable Co.*, 985 S.W.2d at 64–65 (holding court of appeals was entitled to disregard new argument raised in supplemental brief when such brief was filed post-submission months after the change that triggered it and attempted to "resurrect an abandoned claim"); *Craaybeek*, 2021 WL 1803652, at *4 (chastising appellant for "lodg[ing] new accusations [in his amended brief] in an attempt to expand the issues raised in his original brief" when court had warned him not to do so unless he requested leave for that purpose). Mother was granted leave to file her amended opening brief, but she was not granted leave to raise new issues. Rather, she was granted leave to remedy briefing deficiencies. *See MedStar Funding*, 651 S.W.3d at 572 (denying rehearing and rejecting appellant's argument that the majority opinion had ignored an issue raised in appellant's amended brief; explaining that appellant had requested and received leave to file amended brief to address recent case law—not to assert new issues). Indeed, the deficiencies in Mother's original opening brief were sufficiently pervasive that she recognized them herself, and had she not amended her brief, there would not have been any appellate complaints adequately presented for our review. *See Craaybeek*, 2021 WL 1803652, at *3–6 (holding that appellant waived all appellate issues because his brief's "flagrant formal defects" did not "present argument [sufficient to] . . . enable

13

the court to decide the case"); *see also* Tex. R. App. P. 38.1, 38.9. In seeking leave to remedy these deficiencies, Mother expressly represented to this court that her amended brief "w[ould] not expand [the] issues." And we are not inclined to reward dishonesty.

Nonetheless, had Mother candidly sought leave to raise new issues in her amended opening brief, we might have permitted her to do so. And, generally, we strive to reach the merits of an appeal whenever reasonably possible. *See Bertucci v. Watkins*, 709 S.W.3d 534, 541–42 (Tex. 2025); *Horton v. Stovall*, 591 S.W.3d 567, 567–68 (Tex. 2019).

We need not decisively resolve this tension because even if Mother had obtained leave to raise new issues in her amended opening brief, the result would be the same: All eight issues raised in Mother's amended opening brief—her two pretrial challenges, four mid-trial challenges, and two trial-and-judgment-related challenges—fail on their own.

## A.    Pretrial Issues

First, Mother challenges two pretrial rulings by arguing that the trial court (1) should have granted her no-evidence summary judgment motion and (2) should have treated Father's discovery responses as deemed admissions that required

14

judgment in her favor.[12] But none of the relevant motions or discovery documents appear in the appellate record.

It is Mother's burden, as the appellant, to bring forth an appellate record sufficient to show the error of which she complains.[13] *See Enter. Leasing Co. of Hous. v. Barrios*, 156 S.W.3d 547, 549–50 (Tex. 2004) (holding appellant complaining of summary judgment bore burden to provide appellate record containing the key evidence that was on file with the trial court and referenced in the relevant summary judgment motion so as to enable the appellate court to determine harm); *Burgin v. Burgin*, No. 02-24-00504-CV, 2025 WL 2552341, at *4 (Tex. App.—Fort Worth Sept. 4, 2025, no pet.) (mem. op.) (noting lack of reporter's record and reiterating that "[i]t is the appellant's burden to bring forward a record showing the error alleged"). And Mother has not taken the steps necessary to ensure that the complained-of summary

---

[12]Neither pretrial ruling was challenged in Mother's original opening brief. *See Standard Fruit & Vegetable Co.*, 985 S.W.2d at 64–65; *MedStar Funding*, 651 S.W.3d at 572; *Craaybeek*, 2021 WL 1803652, at *4. Moreover, in the trial court, Mother did not seek judgment on Father's discovery responses; rather, she sought to pre-admit them as evidence. *See* Tex. R. App. P. 33.1(a).

[13]When the trial court found Mother to be indigent for purposes of this appeal, it ordered the clerk to prepare the record for Mother without requiring payment. But by default, a clerk's record contains only a limited set of documents, and that limited set does not include an unsuccessful no-evidence summary judgment motion or a party's discovery-related filings. *See* Tex. R. App. P. 34.5(a). If Mother wished to challenge or rely upon these documents on appeal, she needed to designate them for inclusion in the appellate record. *See* Tex. R. App. P. 34.5(b)(2). But she did not do so. In fact, the record does not show that Mother filed a request for the clerk's record at all. *See* Tex. R. App. P. 34.5(a).

judgment and discovery documents were included in the appellate record. *See* Tex. R. App. P. 34.5(a), (b)(2); *see also Price v. HPGM, LLC*, No. 02-25-00294-CV, 2026 WL 1108911, at *8 (Tex. App.—Fort Worth Apr. 23, 2026, pet. filed) (mem. op.) (rejecting appellant's argument that attorney's fees required segregation and noting that she had "not even taken the steps necessary to include the potentially relevant pleadings in the appellate record").

The record does not contain Mother's no-evidence summary judgment motion, Father's response, Mother's objections (if any), or her reply.[14] Nor does the record contain Father's allegedly "legally insufficient" discovery responses. And although Mother has moved to supplement the appellate record since filing her amended opening brief, none of those motions sought to supplement the record with the relevant summary judgment or discovery documents.[15]

---

[14]In portions of Mother's brief, she expresses outrage that the trial court "explicitly admitted it had not read [her summary judgment] reply" and argues that this amounted to an admission by the trial court that it erred. But the reporter's record reveals that (1) Mother's reply was filed on Good Friday before the Monday hearing on her summary judgment motion, and (2) when she informed the trial court that she had filed a reply, the trial court stated, "I'll read that, so I'll take this [i.e, the summary-judgment motion] under advisement."

[15]The only supplementation motion that might have encompassed the necessary documents was an omnibus motion that Mother filed on the day she filed her original opening brief.

Mother's original opening brief did not challenge the summary judgment or discovery rulings. However, it complained that the clerk's record did not include a "May 2022 ex parte order and July 1, 2022 extension order." On the day that Mother filed this brief, she moved this court to order the trial court clerk to file not only the

We thus have no way of assessing whether the trial court erred in its summary judgment or discovery rulings, much less any way to determine whether the trial court's rulings impacted the remainder of the case. *Cf.* Tex. R. App. P. 44.1(a) (stating that "[n]o judgment may be reversed . . . unless . . . the error complained of . . . probably caused the rendition of an improper judgment"). To the contrary, because the documents are missing from the record, we must presume that their contents support the trial court's rulings. *See Enter. Leasing Co. of Hous.*, 156 S.W.3d at 550 ("If the pertinent summary judgment evidence considered by the trial court is not included in the appellate record, an appellate court must presume that the omitted evidence supports the trial court's judgment."); *Barnes v. Univ. Fed. Credit Union*, No. 03-10-00147-CV, 2013 WL 1748788, at *8 (Tex. App.—Austin Apr. 18, 2013, no pet.) (mem. op.) (rejecting challenge to discovery sanction when relevant discovery documents were missing from appellate record and explaining that, without the documents, the appellate court "cannot appraise whether the trial court abused its

"ex parte order and . . . extension order" but also a wide variety of other documents—including orders from the severed vexatious-litigant case, "any orders from the [trial] court between April 2021 and January 2025," and more than 60 trial-court documents with no relevance to the issues in her original opening brief. That motion was denied.

To the extent that Mother's proposed omnibus supplementation might have included the summary judgment and discovery documents of which she now complains, she could not fulfill her responsibility to bring forth an adequate appellate record through an omnibus request for every document bar none. *Cf.* Tex. R. App. P. 33.1(a) (requiring, in parallel preservation context, that appellant raise a specific—rather than global—objection). To hold otherwise would make a mockery of the Rules of Appellate Procedure.

discretion and must presume that the missing documents would sustain the trial court's ruling" (internal quotation marks omitted)), *supplemented on other grounds*, No. 03-10-00147-CV, 2013 WL 3953175 (Tex. App.—Austin July 2, 2013, no pet.) (supp'l op.).

Because Mother has not provided a record sufficient to show that the trial court harmfully erred in its summary judgment or discovery rulings, we overrule her two pretrial challenges.

## B. Mid-Trial Issues

In her next four issues, Mother asserts that the trial court erred in its rulings on her mid-trial motions by (1) refusing to consider either (a) her video evidence or (b) her expert testimony; (2) denying her a jury for the May 2024 trial on the reopened evidence; and (3) violating the ADA.

### 1. Exclusion of Evidence

Mother's first two mid-trial complaints—regarding the trial court's alleged exclusion of her video evidence[16] and expert testimony—are moot.

Mother attempted to offer the video evidence and expert testimony as support for her mid-trial motion for an emergency temporary restraining order. And "[i]t is well-settled that a temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order." *In re B.W.S.*, No. 05-20-00343-CV,

---

[16]Mother's complaint regarding her video evidence was not raised in her original opening brief. *See Standard Fruit & Vegetable Co.*, 985 S.W.2d at 64–65; *MedStar Funding*, 651 S.W.3d at 572; *Craaybeek*, 2021 WL 1803652, at *4.

2022 WL 2712494, at *4 (Tex. App.—Dallas July 13, 2022, no pet.) (mem. op.) (noting further that "[c]omplaints concerning a hearing to obtain temporary orders [are] similarly mooted by the issuance of a final order"); *see In re A.C.*, No. 02-21-00121-CV, 2022 WL 1793419, at *3 (Tex. App.—Fort Worth June 2, 2022, no pet.) (mem. op.) (holding grandmother's complaints regarding temporary orders were moot because "complaints about temporary orders fall by the wayside anyway when a final order has been entered"); *see also* Tex. R. App. P. 44.1(a)(1). Indeed, the trial court's judgment expressly "discharged [the parties] from all further liabilities and obligations imposed by any temporary order [previously] rendered in th[e] case by th[e] trial c]ourt." We thus overrule Mother's two moot complaints.

## 2. Jury Trial

Next, regarding the trial court's allegedly depriving her of a jury trial,[17] Mother's argument is premised on the assumption that she was entitled to a jury trial for the May 2024 continuation of the August 2023 bench trial. Mother has not cited, nor have we found, any authority for this alleged partial-jury-trial entitlement.

And as for the trial as a whole—the trial that began in August 2023—Mother has not pointed us to anything in the record indicating that she requested a jury trial in

---

[17]Mother did not raise this issue in her original opening brief. *See Standard Fruit & Vegetable Co.*, 985 S.W.2d at 64–65; *MedStar Funding*, 651 S.W.3d at 572; *Craaybeek*, 2021 WL 1803652, at *4.

19

writing before the proceeding began.[18] *See* Tex. R. Civ. P. 216(a) ("No jury trial shall be had in any civil suit[] unless a written request for a jury trial is filed with the clerk . . . a reasonable time before the date set for trial . . . but not less than thirty days in advance."). To the contrary, the judgment recites that "[a] jury was waived." *See A.C.*, 2022 WL 1793419, at *4 (holding that grandmother "waived any complaint about not receiving a jury trial" in SAPCR because she did not "point [the court] to any place in the record where she requested a jury trial" and "did not object to going forward with a bench trial").

We overrule Mother's jury-trial issue.

### 3. ADA Violations

Mother's final mid-trial complaint—that the trial court violated the ADA by discriminating against her based on her disability and failing to grant her motion for reasonable accommodations—is also misguided.[19]

---

[18]Mother has not even taken the steps necessary to include her mid-trial motion for a jury trial in the appellate record. *See* Tex. R. App. P. 34.5(b)(2); *Enter. Leasing Co. of Hous.*, 156 S.W.3d at 549–50.

[19]Mother further asserts that by violating the ADA, the trial court necessarily violated the Texas Government Code and Due Process Clause. But the substance of Mother's argument focuses on the provisions and requirements of the ADA. She cites no authority for her assumption that a violation of the ADA is a de facto violation of the Government Code or the Due Process Clause. And to the extent that she intends to argue that the trial court's actions independently violated the Government Code or Due Process Clause, she did not raise that issue in her original opening brief, and she has inadequately briefed it in her amended opening brief. *See* Tex. R. App. P. 38.1(i), 38.9.

By arguing that the trial court violated the ADA, Mother is essentially asserting a cause of action against the trial court. *See Magnuson v. Mullen*, 65 S.W.3d 815, 828–29 (Tex. App.—Fort Worth 2002, pet. denied) (rejecting challenge to judgment based on trial court's alleged failure to make reasonable ADA accommodations and explaining that claim was "not properly before us" because the appellant was "asserting a cause of action directly against the trial court that ha[d] not been litigated on its merits"). The ADA "authorizes private citizens to bring suits for money damages" against public entities that exclude, deny services to, or discriminate against a qualified individual by reason of that individual's disability. *Tennessee v. Lane*, 541 U.S. 509, 517, 531, 124 S. Ct. 1978, 1984–85, 1993 (2004) (describing the ADA as "subject[ing] the States to private suits for money damages" for failing to comply with the statute's provisions); *see* 42 U.S.C. § 12132 (providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"), § 12133 (providing for enforcement by referencing 29 U.S.C. § 794a); *United States v. Georgia*, 546 U.S. 151, 154, 126 S. Ct. 877, 879 (2006) ("Title II [of the ADA] authorizes suits by private citizens for money damages against public entities that violate § 12132."); *cf., e.g.*, *Layton v. Elder*, 143 F.3d 469, 471–73 (8th Cir. 1998) (reviewing case in which a plaintiff sued a county judge under the ADA alleging "that the programs and services offered in the county courthouse are inaccessible").

Mother did not sue the trial court in this case, nor did her live pleading contain any ADA-related claims or affirmative defenses. *See Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 83 (Tex. App.—Texarkana 2008, pet. denied) (rejecting similar ADA-based challenge to judgment; noting that even if "a violation of the ADA [by the opposing party] could void a judgment, [a sister court] has held the claim is an affirmative defense that must be pleaded and proved to avoid waiver"; and observing that the appellant had not pleaded the ADA as an affirmative defense); *George v. Hous. Eye Assocs.*, No. 14-02-00629-CV, 2003 WL 22232651, at *4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2003, pet. denied) (mem. op.) (rejecting argument that trial court's dismissal of appellant's claims violated ADA and noting that there was "no evidence in the record that appellant pursued, or attempted to pursue, a cause of action under the ADA in the trial court"); *Magnuson*, 65 S.W.3d at 828–29 (reviewing ADA-related challenge to judgment and distinguishing appellant's case law because, "in the cases cited by [the appellant] in support of his ADA claim, the plaintiffs filed lawsuits specifically naming the alleged discriminating courts or judges as defendants"); *cf. In re P.M.*, No. 02-14-00205-CV, 2014 WL 8097064, at *33 (Tex. App.—Fort Worth Dec. 31, 2014, pet. denied) (mem. op. on reh'g) (holding ADA complaint was not preserved and reiterating that "in a termination-of-parental-rights case, an ADA complaint [against the opposing party, i.e., the Department of Family and Protective Services] is an affirmative defense that must be pleaded and proven

and for which findings must be secured to preserve error for appeal"); *In re B.L.M.*, 114 S.W.3d 641, 648–49 (Tex. App.—Fort Worth 2003, no pet.) (similar).

Mother has not cited any authority to support her assumption that an unpleaded, unlitigated ADA claim against an offending trial court may invalidate the trial court's otherwise-valid judgment in a direct appeal from an action between the disabled individual and a third party. *See Corona*, 245 S.W.3d at 83 (noting lack of authority "for the proposition that a violation of the ADA voids an otherwise valid judgment" and clarifying that "[a] person alleging discrimination under Title II of the ADA has the remedies, procedures, and rights set forth in [federal law]"); *see also Magnuson*, 65 S.W.3d at 828–29. And we "decline to decide an [ADA claim] on appeal that has not yet been the subject of litigation in a trial court."[20] *Magnuson*, 65 S.W.3d at 828–29.

---

[20]Even if we were to reach the merits of Mother's unlitigated ADA claim, she has not demonstrated a violation of the statute.

First, she has not demonstrated that the accommodations she demanded were reasonable or that the trial court's accommodations were inadequate. *See Lane*, 541 U.S. at 531–32, 124 S. Ct. at 1993 (noting that the ADA "requires only 'reasonable modifications'"); *Corona*, 245 S.W.3d at 83 (noting that "[a] public entity is not required to grant the specific accommodation requested, so long as the accommodation granted is adequate"). The trial court granted several of Mother's requested accommodations, including allowing her the assistance of an ADA helper. Yet, Mother claims she was entitled to more—specifically, to "CART Technology" and to have "all information in writing, including testimonies and arguments." But the trial court explained that it "d[id]n't have [CART Technology] to be able to provide it." *See Lane*, 541 U.S. at 532, 124 S. Ct. at 1993 (commenting that, "in the case of older facilities, . . . a public entity may comply with [the ADA] by adopting a variety of less costly measures, including . . . assigning aides to assist persons with disabilities in

We overrule Mother's ADA issue.

## C.     Trial and Judgment Issues

Mother next complains that the trial court's ultimate assessment of the evidence and disposition of the case were flawed in two ways: that the trial court (1) failed to conduct an in-chambers child interview as part of its consideration of the trial evidence; and (2) failed to enter findings of fact and conclusions of law explaining the reasons for its judgment.

### 1.     Child Interview

Mother's first allegation—that "the [trial] court did not conduct the statutorily mandated [child] interview"—is belied by the record. *See* Tex. Fam. Code § 153.009(a).

Mother argues that the trial court was required to interview the couple's eldest child because that child had turned 12 by the time the trial ended in May 2024. *See id.* ("In a nonjury trial or at a hearing, on the application of a party, . . . the court shall

---

accessing services"). And resolving a trial on written submission rather than through the presentation of live evidence would fundamentally alter the nature of the proceeding. *Id.* at 532, 124 S. Ct. at 1993–94 (recognizing that the ADA does not "require[ the court] to undertake measures that would . . . effect a fundamental alteration in the nature of the service").

Regarding Mother's second ADA complaint—her allegation that the trial court violated the ADA by discriminating against her—she attempts to support her argument by pointing to the trial court's other challenged actions, i.e., its failure to provide all of her requested accommodations, failure to grant her summary judgment motion, failure to consider her video evidence and expert testimony at the mid-trial hearing, failure to provide her a jury trial, and the like. But we have already rejected Mother's challenges to those actions on other grounds. *See supra* Sections III.A–B.2.

interview in chambers a child 12 years of age or older . . . ."). But the record confirms

that the trial court had long since interviewed both children before either of them

turned 12. *See id.* ("In a nonjury trial or at a hearing, . . . the court . . . may interview in

chambers a child under 12 years of age . . . ."). Indeed, the reporter's record includes a

volume transcribing the interviews, and the judgment recites that the trial court

"conducted an in-chambers interview of the children the subject of this suit on or

about August 28, 2023." To the extent that Mother—by ignoring the interviews'

existence—intends to assert that the trial court was required to conduct a second

interview after the eldest child turned 12, she has not cited any legal authority for that

assertion. *See* Tex. R. App. P. 38.1(i).

And such an assertion would be inconsistent with Mother's theory of harm

anyway. She complains that "the absence of the child's testimony creates a gap in the

evidence." But because the trial court did, in fact, interview both children, the record

confirms that no such gap exists.[21]

We overrule this issue.

### 2. Findings of Fact and Conclusions of Law

Mother's other trial-related complaint similarly ignores the record. She argues

that the trial court "failed to issue the statutorily required findings [of fact] explaining

---

[21]Although Mother asserts, in her reply brief, that the children's circumstances had materially changed between August 2023 and May 2024, she has not cited any legal authority requiring a trial court to conduct a second in-chambers interview based on a mid-trial change in circumstances. And regardless, she did not raise that issue in her original opening brief or amended opening brief.

its deviations" from the standard guidelines for parental conservatorship, possession, and child support. *See* Tex. Fam. Code § 154.130 (requiring a trial court to make child-support findings in certain circumstances), § 153.258(a) (requiring a trial court, upon a proper request, to make findings stating its reasons for deviating from standard possession guidelines).[22] But again, the trial court did, in fact, make "findings on child support pursuant to [Family Code] Section 154.130" and findings delineating, in its words, "the reasons the [trial c]ourt g[a]ve[] for deviating from the guidelines for possession of and access to the children pursuant to the Texas Family Code." [Capitalization altered.] Such findings were set forth both in the trial court's letter ruling and in the final judgment itself.[23] To the extent that Mother—by ignoring such

---

[22]Mother's amended opening brief repeatedly asserts that Section 153.131 of the Family Code requires both parents to be appointed as joint managing conservators unless the trial court enters findings that such appointment "would significantly impair the child[ren]'s physical health or emotional development." Tex. Fam. Code § 153.131(a). But in reality, the statute she invokes addresses a trial court's failure to appoint either "a parent . . . [as] sole managing conservator or both parents . . . as joint managing conservators." *Id.* (stating that, "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child").

[23]Even if the trial court had not issued findings, because Mother's notices of past-due findings were untimely, she waived the issue. *See* Tex. Fam. Code § 153.258(b) (requiring request for possession-related findings to "conform to the Texas Rules of Civil Procedure"); *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (reiterating rule that "a party waives its right to challenge a failure to file findings if it does not file a notice of past due findings as [R]ule 297 requires" and going on to note that, for purposes of this preservation requirement, "it is immaterial

findings' existence—intends to challenge the trial court's failure to repeat its findings in a separate document dedicated to that purpose,[24] she does not explain how the findings' placement harmed her. *See* Tex. R. App. P. 38.1(i), 38.9, 44.1(a). To the contrary, Mother's theory of harm is that the lack of findings "forced [her] to guess at the specific reasons for the trial court's significant deviations" without "knowing which factors the court found determinative or what evidence it found most credible." That theory falls apart in the face of the record because—whether or not the findings should have been included in the judgment—the trial court explained its reasoning.

We overrule this final issue.

---

whether the court literally filed no findings or filed something that amounts to no findings"); *supra* note 4.

[24]Although Mother's amended opening brief generally ignores the findings' existence altogether, at times, she frames her argument as the trial court's "failure to issue separate findings." And Mother's original opening brief (and motion to strike filed around the same time) acknowledged that the trial court made findings of fact and conclusions of law but argued that they were improperly included in the judgment. Meanwhile, her reply brief acknowledges the trial court's findings but argues that they "[we]re not findings—they [we]re ultimate conclusions" because the trial court did not cite the "specific evidence" supporting its statements.

## IV. Conclusion

Mother cannot raise new appellate issues beyond those in her original opening brief, and even if she had obtained leave to do so, the eight issues raised in her amended opening brief lack merit. Mother's pending motions are denied, and the trial court's judgment is affirmed. *See* Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 9, 2026